### IN THE UNITED STATES DISTRICT COURT
### OF THE DISTRICT OF NEW MEXICO

KOOSHAN SARMEIDANI
     Plaintiff,

v.                                    Case No.  **1:26-cv-183**

U.S. CITIZENSHIP & IMMIGRATION SERVICES;
JOSEPH B. EDLOW, Director of U.S. Citizenship and Immigration Services; and
ANTHONY JACKSON, Director of the Albuquerque USCIS Field Office.
     Defendants

### <u>PETITION FOR WRIT OF MANDAMUS,</u>
### <u>AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff Kooshan Sarmeidani (*hereinafter* "Plaintiff") by and through undersigned counsel, MACIAS LAW (Alejandro Macias-Urias, Esq.), hereby files this Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief. Plaintiff challenges Defendants U.S. Citizenship & Immigration Services' ("USCIS"), Joseph B. Edlow, Director of U.S. Citizenship and Immigration Services, and Director Anthony Jackson of the Albuquerque USCIS Filed Office for unlawful delay in adjudicating Plaintiff-Beneficiary's adjustment of status application when Defendants have repeatedly failed to adjudicate Plaintiff's application for him to become a permanent legal resident within a reasonable time. Furthermore, Plaintiff asks this court to enjoin Defendant's and those acting under them to cease the application of two Policy Memorandums to the adjudication for his pending Form I-485, *Application to Register Permanent Resident or Adjust Status*:

(1) the section of the December 2, 2025, Policy Memorandum, the subject of which is "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications filed by Aliens from High-Risk Countries." PM-602-0192 ("**Policy Memorandum I**"), that places "a hold on pending benefit requests for alien from countries listed in Presidential Proclamation (PP) 10949, *Restricting the entry of Foreign Nationals to Protect the United*

1

*States From Foreign Terrorist and Other National Security and Public Safety Threats* [ "PP 10949"][1], pending a comprehensive review, regardless of entry date." **Exhibit A**, *December 2, 2025, USCIS Policy Memorandum at 1*, paragraph 2; and

(2) the section of the January 1, 2026, Policy Memorandum, the subject of which is "Hold and Review of USCIS Benefit Application Filed by Aliens from Additional High-Risk Countries." PM-602-0194. ("**Policy Memorandum II**") that places a hold on all pending benefit applications, for aliens listed in Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign National's to Protect the Security of the United States* [PP 10998"][2], pending a comprehensive review, regardless of entry date." **Exhibit B**, January 1, 2026, USCIS Policy Memorandum, at 1, paragraph 1.[3]

## INTRODUCTION & NATURE OF ACTION

1.       This is an action to ask the Court to compel the Defendant's to adjudicate Plaintiff's Form I-485 and to compel the Defendant to cease the application of sections of the Policy Memorandums aforementioned that place a hold on pending immigration benefit requests based on an applicant's nationality.

2.       Plaintiff is a citizen of Iran and applicant for adjustment of status. Plaintiff was granted Asylum on August 28, 2019, by the San Francisco, California Immigration Court due to his past persecution and well-founded fear of future persecution based on his religion and previous work with the U.S. government.

---

[1] Accessible at: https://www.whitehouse.gov/presidential-actions/2025/06/restricting-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and-other-national-security-and-public-safety-threats/ (last accessed on January 21, 2026).

[2] Accessible at: https://www.whitehouse.gov/presidential-actions/2025/12/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-the-united-states/ (last accessed on January 21, 2026).

[3] Policy Memorandum I and Policy Memorandum II are collectively referred to as "Policy Memorandums."

3.      On or about May 30, 2023, after meeting all required statutory obligations pursuant to 8 C.F.R § 209.2, Plaintiff applied to adjust his status to become a legal permanent resident. Defendants failed to adjudicate Plaintiff's application within a reasonable time.

4.      Plaintiff's application was received by Defendants USCIS, Director Jospeh B. Edlow, and Director Anthony Jackson, on May 30, 2023, and they were required to decide Plaintiffs application as part of the adjudication process.

5.      Defendants USCIS, Director Edlow, and Director Anthony Jackson have yet to adjudicate Plaintiff's application for more than 973 days (2 years, 7 months, and 28 days) since he submitted his application and counting.

6.      Plaintiff brings this action to compel Defendants USCIS, Director Jospeh B. Edlow, and Director Anthony Jackson to adjudicate Plaintiffs application. Plaintiff's application remains within the jurisdiction of Defendants USCIS, Director Jospeh B. Edlow, and Director Anthony Jackson who have improperly withheld action on his application for an unreasonable period to the detriment of the Plaintiff.

7.      To date, Plaintiff has not received a decision on his case, and now Defendant, through policy Memorandums, has put an indefinite hold on the adjudication of his application, further injuring plaintiff. Plaintiff is entitled to a decision on his pending application. The improper withholding of statutorily mandated adjudication of the pending application presents ongoing violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555 et seq. and § 701 et seq.; the Immigration Nationality Act ("INA") § 245(a)(8 U.S.C §1225, 8 C.F.R § 245.1(a), 8 C.F.R. § 209.2) and the U.S. Constitution, Equal Protection Clause.

8.      Plaintiff's rights are infringed by this withholding of adjudication because it is detrimentally affecting his life, employment opportunities, including employment opportunities

with the U.S. National Army, private employers and ventures, his ability to travel for work, and his ability to plan for the future. Plaintiff requests Defendant's adjudicate his form I-485, a mandatory, non-discretionary duty.

## JURISDICTION

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (mandamus action to compel an officer of the United States to perform his duty) to redress the deprivation of rights, privileges, and immunities secured to plaintiff, by which statutes jurisdiction is conferred, to compel Defendant to perform a duty owed to Plaintiff.

10.     Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b), and § 701, 702 et seq, the APA. The APA requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." USCIS is subject to 5 U.S.C. § 555(b).

11.     Numerous federal district courts have ruled that adjudication of a properly filed application for immigration benefits, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Government is under obligation to perform in a timely manner. *See*, *Bustos v. Mayorkas*, Civ. No. 20-1348 KG/SMV, 2021 WL 3931173 (D.N.M. 2021) ("Without a statutory delegation to the Attorney General of discretionary authority to establish a timetable, USCIS regulatory decisions about the pace are not statutorily excluded from judicial review.") *see* also *Tista v. Jaddou*, 577 F.Supp.3d 1219 (D.N.M. 2021); *Jones v. Gonzales*,  2007 WL 1810135, *1 (S.D. Fla. 2007); ("[N]o agency responsible for resolving

matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

12.     Both the regulations and the INA provide numerous examples of duties owed by USCIS in the adjustment of status process. 8 U.S.C. § 1103 provides, "the Secretary of Homeland Security *shall* be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens[.] (Emphasis added). The Code of Federal Regulations provides that, "each applicant for adjustment of status…*shall* be interviewed by an immigration officer." 8 C.F.R. § 245.6 (emphasis added). The regulations further provide that "the applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i) (emphasis added).

13.     Plaintiff has submitted multiple inquiries with Defendant USCIS to adjudicate his adjustment of status application, including a request made in March 13, 2025, and a second inquiry made in August 01, 2025, with no response from USICS.

14.     There exist and actual and justiciable controversy between Plaintiff and Defendant's requiring a solution by this Court. Plaintiff has no other adequate remedy at law.

15.     This Court has the authority to grant relief under the Mandamus and Venue Act, 28 U.S.C. § 1361, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C.§§ 2201-02. The United States has waived sovereign immunity under 5 U.S.C. § 702.

## **VENUE**

16.     Venue in this jurisdiction is proper under 28 U.S.C. § 1391(e)(1)(C) because Plaintiff resides in this District and no real property is involved in this action. Venue is also proper

5

in this district because this is a civil action in which Defendant's are officers of the United States or agencies thereof acting in their official capacities.

**PARTIES**

17.     Plaintiff, Kooshan Sarmeidani, is a citizen of Iran and applicant for adjustment of status, filed on May 30, 2023, based on an approved Asylum grant issued on August 28, 2019. Plaintiff was granted Asylum by the San Francisco, California Immigration Court due to his past persecution and well-founded fear of future persecution based on his religion and previous work with the U.S. government. USCIS assigned Plaintiff's application case number: MSC2390575720.

18.     Defendant USCIS is a component of the Department of Homeland Security, 6 U.S.C. § 271, and an agency within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for adjudicating immigration benefits including adjustment of status applications to become a legal permanent resident. USCIS has not adjudicated Plaintiffs' application within a reasonable time. USCIS has failed to adjudicate his application for more than 973 days (2 years, 7 months, and 28 days) since he submitted his application and counting. Plaintiffs' application remains pending with USCIS.

19.     Defendant Joseph B. Edlow, is the Director of USCIS. As the director of USCIS he is responsible for overseeing, and has ultimate responsibility for, the timely adjudication of immigration benefits and establishing and implementing governing policies. He is sued in his official capacity.

20.     Defendant Anthony Jackson is the Director of the USCIS Albuquerque Field Office in Albuquerque, New Mexico. He exercises authority over USCIS activities relating to issuing legal permanent residence within the New Mexico jurisdiction. He is sued in his official capacity.

## LEGAL FRAMEWORK

21.     Plaintiff is a citizen and national of Iran. Plaintiff became eligible to become a lawful permanent resident after being physically present in the United Stats for at least 1 year after he was granted Asylum by the Immigration Court. *See* 8 CFR § 209.2, Adjustment of Status of Alien Granted Asylum.

22.     As an alien granted asylum, Plaintiff became eligible to apply for adjustment of status on August 28, 2020, one year after being granted Asylum. *See* Id.

23.     To be eligible for a green card as an asylee, the applicant must meet the following requirements:

a.      Properly File form I-485, Applicant to Register Permanent Residence or Adjust Status;

b.      Be physically present in the United States when the applicant filed form I-485;

c.      Have been granted asylum status by USICS or former INS, an immigration judge with the Executive Office for Immigration Review (EOIR), the Board of Immigration Appeals with EOIR, or a federal court;

d.      Have been physically present in the United States for at least 1 year after being granted asylum;

e.      Continues to meet the definition of a refugee or asylee;

f.      Have not firmly resettled in any foreign country;

g.      Has not lost his grant of asylum status or been terminated;

7

h.        Is admissible to the United States for lawful permanent residence or is eligible for a waiver of inadmissibility or other form of relief, and;

i.        Applicants meet a favorable exercise of discretion. *See* 8 CFR § 209.2, Adjustment of Status of Alien Granted Asylum; *see also* [https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-asylees](https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-asylees) *( last accessed January 21, 2026).*

24.        In addition to meeting the requirements, an applicant for adjustment of status based on an approved grant of asylum, applicant must submit a medical examination to determine whether any ground of inadmissibility described in section 212(a)(1)(A) of the INA apply. The asylee is also required to establish compliance with the vaccination requirements described under section 212 (a)(1)(A)(ii) of the INA. *See* 8 CFR § 209.2 An applicant must also submit proof of:

j.        His/her 1 year of physical presence;

k.        Asylum grant;

l.        2 Passport Style photos;

m.        Copy of government issued identity document with photograph;

n.        Copy of passport page

o.        Certified Police and Court Records for any criminal charges, arrest, or convictions;

p.        And if applicable, Form I-602 or I-601 Application for Waiver of grounds of excludability.

25.        Once Defendants USCIS, Director Edlow, and Director Jackson received and accepted Form I-485, USCIS may require the petitioner/applicant to appear for an appointment to take biometrics (fingerprints, photograph, and/or signature), and, at that time, if required to

provide biometrics, applicants will be required to sign an oath. *See* 8 CFR 103.2(b)(9); *see also* Department of Homeland Security, U.S. Citizenship and Immigration Services, Instructions for Application to Register Permanent Residence or Adjust Status, pp. 5, https://www.uscis.gov/sites/default/files/document/forms/i-485instr.pdf.

26. Defendants USCIS, Director Edlow, and Director Jackson, admittedly state that the average processing time for an application to register permanent residence or adjust status (Form I-485) for applicants with a grant of asylum is 20.5 months.

U.S. Citizenship and Immigration Services, Check Case Processing Times, https://egov.uscis.gov/processing-times/ (last accessed January 22, 2026).

9

27.     If the applicant properly filed his application and meets all the requirements, then Defendants USCIS, Director Edlow, and Director Jackson must make a decision on the benefit for permanent legal residence. Defendants have yet to make a decision on plaintiffs' application for more than 973 days (2 years, 7 months, and 28 days). While discretion in these cases exist, the exercise of discretion does not mean the decision can be withheld arbitrarily, be inconsistent, or dependent on intangible or imagine circumstances. *See* U.S. Citizenship and Immigration Services, Chapter 10 - Legal Analysis and Use of Discretion, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-10 (last accessed May 28, 2025).  While the defendant has the discretionary power to grant or deny an application, it does not have the discretion as to whether or not to decide at all. *See Aslam v. Mukasey*, 531 F. Supp. 2d 736, 739 (E.D. Va. 2008).

28.     Numerous federal district courts including this Court have ruled that adjudication of a properly filed application for immigration benefits, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Government is under obligation to perform in a timely manner. *See, Bustos v. Mayorkas*, Civ. No. 20-1348 KG/SMV, 2021 WL 3931173 (D.N.M. 2021)("Without a statutory delegation to the Attorney General of discretionary authority to establish a timetable, USCIS regulatory decisions about the pace are not statutorily excluded from judicial review."); *see* also *Tista v. Jaddou*, 577 F.Supp.3d 1219 (D.N.M. 2021); *Jones v. Gonzales*,  2007 WL 1810135, *1 (S.D. Fla. 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

**FACTUAL BACKGROUND**

29.     Plaintiff arrived in the United States on or about August 18, 1994, on a B-2 Tourist Visa.

30.     Plaintiff overstayed his B-2 Visa and remained in the United States.

31.     On August 28, 2019, Plaintiff was granted Asylum by the San Francisco, California Immigration Court due to his past persecution and well-founded fear of future persecution based on his religion and previous work with the U.S. government.

32.     On May 30, 2023, Plaintiff submitted Form I-485, Application to Register to Permanent Resident or Adjust Status. Plaintiff also submitted Form I-765, Application for Employment Authorization Document in order to obtain work authorization and Form I-693, Report of Immigration Medical Examination and Vaccination Record.

33.     Along with Plaintiffs' Form I-485, Plaintiff submitted:

q.      Copy of Immigration Judge Order, showing a grant of Asylum.

r.      Copy of I-94 record, showing admission as an asylee

s.      Copy of most recent passport

t.      Copy of most recent employment authorization documents

34.     As part of the Physical Prescence Requirements, Plaintiffs also submitted:

u.      Credit Card bill from February 2022

v.      Credit Card bill from June 2022

w.      Credit Card bill from August 2022

x.      Credit Card bill from September 2022

y.      Credit Card bill from October 2022

z.      Credit Card bill from November 2022

11

aa.     Credit Card bill from December 2022

bb.     Credit Card bill from January 2023

cc.     ISD Correspondence from March 2023

35.     As part of the Discretionary factors, Plaintiffs also submitted:

dd.     Letter of support from Shanaz Gandomani

ee.     Letter of support from Kobra Gandomani

ff.     Order of Dismissal for previous arrest

gg.     Nolle Prosequi, showing charges dismissed

hh.     Notice of unavailable records for charges dismissed.

36.     Plaintiffs' application was received by Defendant USCIS on May 30, 2023.

37.     On March 22, 2024, Plaintiffs' immigration counsel received a Request for Initial Evidence ("RFE") from Defendant USICS, asking Plaintiff to clarify an answer to a question on form I-485 that was mistakenly left blank. USICS indicated that the RFE must be returned and submitted to USICS by June 17, 2024.

38.     On April 02, 2024, Plaintiff's immigration counsel timely responded to the RFE by answering the question that was left blank and explaining the oversight.

39.     On April 02, 2024, Plaintiff's immigration counsel also submitted an expedite request with Defendant USICS, detailing the U.S. Army's interest in expediting Plaintiff's I-485 application. Enclosed with that request was a recruitment letter from the U.S. Army, detailing that Plaintiff "possesses a unique combination of education, language proficiency, and professional experience working with the U.S. Armed Forces that make him an exceptional prospect as a Special Forces Candidate". The letter from the U.S. Army also indicated that Plaintiff must be admitted to the United Status for permanent residence in order to initiate his Enlistment process.

12

That letter was signed by a First-Class U.S. Army Sergeant. Plaintiff's immigration counsel also submitted a copy USCIS's Policy Manual with the Expedite Criteria showing that Plaintiff met the expedite criteria given the U.S. Army's interest in Plaintiff's recruitment. To this date, USICS has not responded to the expedite request.

40.    On March 13, 2025, Plaintiff's immigration counsel submitted a case inquiry with Defendant USICS asking for an update on his I-485 application due to the case being outside of processing times. To this date, USICS has not responded to that request.

41.    On or about August 2025, Plaintiff's immigration counsel submitted an online inquiry request with USCIS, indicating that the case was outside the normal processing times. USICS provided Plaintiff's immigration counsel with a request ID number of SR12332503033RPA. To this date, no response has been received by USICS.

42.    Plaintiff has complied with all statutory and regulatory requirements for Plaintiff to adjust status to legal permanent resident. He is eligible to adjust status as a matter of law, and there is no apparent basis for the delay other than Defendants USCIS', Director Edlow, and Director Jackson's failure to adjudicate Plaintiffs' application.

43.    Defendants USCIS, Director Edlow, and Director Jackson have failed to adjudicate Plaintiff's adjustment of status for 973 days (2 years, 7 months, and 28 days) and counting.

## USCIS's POLICY MEMORANDUM- STATEMENT OF FACTS

44.    On December 02, 2025, USICS published Policy Memorandum I on its website. Exhibit A, *December 02, 2025, USCIS Policy Memorandum*. Policy Memorandum I explicitly withholds USICS adjudications for citizens from 19 countries identified in PP 10949.

45.    On January 01, 2026, USICS published Policy Memorandum II on its website, which notes "[t]his memorandum does not superseded the guidance in Policy Memorandum I,

Hold and Review of all pending Asylum Applications and all USCIs Benefit Applications filed by Alien from High Risk Countries on December 01, 2025, *except as specified under the "exception to the Adjudication Hold' outlined in the memorandum,"* noting that the public facing version of the Policy Memorandum was published December 02, 2025. Exhibit B, *January 01, 2026, USCIs Policy Memorandum*, at paragraph 1.

46.     Policy Memorandum II expanded the number of travel ban countries to include the following 39 countries, plus the Palestinian Authority: Afghanistan, Angola, Antigua and Barbuda, Benin, Burkina Faso, Burma, Burundi, Chad, Republic of the Congo, Cote d'Ivoire, Cuba, Dominica, Equatorial Guinea, Eritrea, Haiti, Gabon, The Gambia, Iran, Laos, Libya, Malawi, Mali, Mauritania, Niger, Palestinian Authority, Sierra Leone, Senegal, Somalia, South Sudan, Sudan, Syria, Tanzania, Togo, Tonga, Turkmenistan, Venezuela, Yemen, Zambia, and Zimbabwe.

47.     Policy Memorandum II further provides in part, "The following are exceptions to the adjudication hold" listing 10 exceptions, including the exception for "Benefit requests filed by aliens whose entry would serve a United States national interest". *See* January 01, 2026, USCIS Policy Memorandum, pg. 4-5.

48.     In footnote 16, Policy Memorandum II elaborates on what a United States National Interest would be by providing in part, "For example, a benefit request filed by an alien whose entry into the United States would provide significant benefit to the United States may include, but is not limited to, a scientist or medical researcher working on a critical public health project, an engineer with specialized skills needed for a key infrastructure initiative, or *someone with unique expertise supporting U.S. national security* or economic interests. (Emphasis added).  This is a case-by-case determination and requires approval from the headquarters of the adjudicative

directorate or program office". *See January 01, 2026, USCIs Policy Memorandum*, at pg. 4-5, footnote 16.

49.    The evidence submitted to USCIS by Plaintiff's immigration counsel, including the recruitment letter from the U.S. Army, detailing that Plaintiff "possesses a unique combination of education, language proficiency, and professional experience working with the U.S. Armed Forces that make him an exceptional prospect as a Special Forces Candidate"  may be sufficient evidence to establish  that Plaintiff may qualify for such an exception as "someone with unique expertise supporting U.S. national security". Defendant USCIS has not made that determination as it never responded to the expedite request submitted by Plaintiff's immigration counsel.

50.    Plaintiff asserts that he may be eligible for this exception, however, it's unclear if the exception applies without cooperation or response by USCIS to his expedite request.

51.    In Policy Memorandum II, USCIS asserts that, "[t]his effort ensures USCIS exercises its full authority to investigate immigration benefit requests filed by or for aliens who may pose risks to the national security and public safety of the United States, as outlined in DHS Delegation of Authority, issued June 05, 2003". *See* Exhibit C, DHS Delegation of Authority 0150.1, issued June 5, 2003. While this delegation gives USCIS the authority to investigate, interrogate, conduct biometrics for aliens in the U.S., and other important delegations, it extends no authority to implement a *hold* on I-485 applications.

52.    Plaintiff and his family have been significantly harmed by the unlawful delay in adjudication of his I-485 and now is significantly harmed by the hold of adjudication on his I-485. This indefinite hold has left his life and future in the U.S. suspended in a state of prolonged uncertainty.

53.     Plaintiff has prospective employment opportunities as a security strategist for a U.S. private firm where he is being considered for abroad hire for his expertise in security. He has been tasked with implementing the firm's security strategy that will require his attendance abroad, including at the U.S. Embassy in Tegucigalpa, Honduras. His trip abroad with his employer has been postponed, and his employment is on the line due to Defendant's delay in adjudicating his adjustment of status application. Without his green card and permanent residence status, Plaintiff faces significant obstacles in planning for his future, including the potential loss of his current position with this private U.S. firm.

54.     Defendant's delay has also affected Plaintiff's ability to become eligible for U.S. citizenship, and the extensive rights and benefits that accompany it, including the right vote, fully participate in the democratic process, ability to obtain a U.S. passport for unrestricted travel, eligibility for jobs restricted to U.S. Citizens, the opportunity to run for public office, and the ability to sponsor immediate family members for immigration to the United States, if he so wishes to do so.

55.     Plaintiff remains constrained by this unlawful delay in adjudicating his adjustment of status, form I-485. The ongoing harms underscores the tangible and far-reaching consequences of Defendant's hold on his Form I-485 adjudication.

56.     Unless and until Plaintiff's form I-485 application is adjudicated, he will continue to suffer severe, concrete, and particularized injury.

## LAW AND ARGUMENT

### A. Defendant's Mandatory Duty to Adjudicate Plaintiff's Form I-485 Application

16

57.     The INA and the regulations pursuant to the INA impose on the Defendant a mandatory, affirmative, and non-discretionary duty to adjudicate properly filed Form I-485 applications.

58.     Courts have found that immigration authorities have a mandatory duty to adjudicate an application. See, e.g., *Iddir*, 301 F.3d at 500 (duty to adjudicate applications under the diversity lottery program); *Patel*, 134 F.3d at 933 (duty to adjudicate visa application); *Yu*, 36 F. Supp. 2d at 932 (duty to process SIJ application in a reasonable amount of time); *Kai Hoo Loo*, 2007 U.S. Dist. LEXIS 17822, at *13 ("Indeed, numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications."); *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) (holding that the regulation stating that consular officials either "issue or refuse" a completed visa creates a duty to adjudicate).

59.     This Court has ruled that adjudication of a properly filed application for immigration benefits, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Government is under obligation to perform in a timely manner. *See, Bustos v. Mayorkas*, Civ. No. 20-1348 KG/SMV, 2021 WL 3931173 (D.N.M. 2021)("Without a statutory delegation to the Attorney General of discretionary authority to establish a timetable, USCIS regulatory decisions about the pace are not statutorily excluded from judicial review."); *see* also *Tista v. Jaddou*, 577 F.Supp.3d 1219 (D.N.M. 2021); *Jones v. Gonzales*, 2007 WL 1810135, *1 (S.D. Fla. 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

60.     In the immigration context, an agency has a general duty to take some action, but does not have a duty to exercise its discretion in any certain manner. *Silveyra v. Moschorak*, 989

17

F.2d 1012, 1015 (9th Cir. 1993)("[m]andamus may not be used to instruct an official how to exercise discretion unless that official has ignored or violated 'statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised.'"); ***Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (the Attorney General has discretion to grant or deny an application, but does not have discretion to simply never adjudicate an adjustment application);** *Soneji v. Dep't of Homeland Sec.*, 525 F. Supp. 2d 1151, 1155 (N.D. Cal. 2007) (with respect to an APA claim, finding USCIS' argument that it does not have to adjudicate an adjustment application "not only pushes the bounds of common sense but is also contradicted by a wealth of authority from this and other districts.") (citing cases).

61.     The INA, the code of Federal Regulations, and longstanding USCIS policy unequivocally impose a duty to adjudicate application and make clear that it is a mandatory duty on the Defendant.

### B.  Defendant's Withholding of Adjudication is Unlawful and Unreasonable

62.     Under the APA, a reviewing court may order action unlawfully withheld or unreasonably delayed. "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall compel agency action unlawfully withheld or unreasonably delayed;" and may also "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law" See 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D).

63.     Congress has never granted the authority to the executive branch to put a hold on Form I-485 adjudications. Rather, Congress has made clear what it considers a reasonable time for

adjudicating immigration benefits. "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." See 8 U.S.C. §1571 and (Pub. L. 106–313, title II, §202, Oct. 17, 2000, 114 Stat. 1262.)

64.    Defendant owes plaintiff a duty to properly, and in good faith, complete processing of Plaintiff's application and render a facially legitimate and Bonafide decision, which Defendant has wholly disregarded that duty.

C. **Defendant's Withholding of Adjudication, and Unreasonable Delay have Harmed Plaintiff**

65.    Plaintiff and his family have been significantly harmed by the unlawful delay in adjudication of his I-485 and now is significantly harmed by the hold of adjudication on his I-485. This indefinite hold has left his life and future in the U.S. suspended in a state of prolonged uncertainty.

66.    Plaintiff has prospective employment opportunities as a security strategist for a U.S. private firm where he is being considered for hire for his expertise in security. He has been tasked with implementing the firm's security strategy that will require his attendance abroad, including at the U.S. Embassy in Tegucigalpa, Honduras. His trip abroad with his employer has been postponed, and his employment is on the line due to Defendant's delay in adjudicating his adjustment of status application. Without his green card and permanent residence status, Plaintiff faces significant obstacles in planning for his future, including the potential loss of his current position with this private U.S. firm.

67.     Defendant's delay has also affected Plaintiff's ability to become eligible for U.S. citizenship, and the extensive rights and benefits that accompany it, including the right vote, fully participate in the democratic process, ability to obtain a U.S. passport for unrestricted travel, eligibility for jobs restricted to U.S. Citizens, the opportunity to run for public office, and the ability to sponsor immediate family members for immigration to the United States, if he so wishes to do so.

68.     Plaintiff remains constrained by this unlawful delay in adjudicating his adjustment of status, form I-485. The ongoing harms underscores the tangible and far-reaching consequences of Defendant's hold on his Form I-485 adjudication.

69.     Furthermore, Defendant's Policy Memorandums are harming the national interest of the U.S. as applicant's like Plaintiff, who are being considered and recruited to the National Armed forces can further the national security and Interest of the United States.

70.     Unless and until Plaintiff's form I-485 application is adjudicated, he will continue to suffer severe, concrete, and particularized injury.

**D.      Plaintiff is Entitled to Relief**

71.     District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Moreover, a district court reviewing agency action under the APA may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

72.     Pursuant to the APA, 5 U.S.C. §§706(1), 706(2)(A), 706(2)(D), a reviewing court may also "hold unlawful and set aside agency action, findings, and conclusions found to be

arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law" and agency action taken "without observance of procedure required by law."

73.    The APA requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555. The INA's implementing regulations provide that when a Form I-485 application has been properly completed and executed it must be either approved or denied. 8 C.F.R. § 245.2(a)(5). USCIS does not have the right to interminably suspend action on a Form I-485 application; it must decide and act consistently with that decision by either issuing or formally refusing the Form I-485 application. Defendants have withheld adjudication of Plaintiff's adjustment application for more than, 973 days (2 years, 7 months, and 28 days), and unreasonable amount of time, even to USCIS's own standards as they have themselves admitted that processing of an I-485 for Asylees is taking on average, 20 months.

74.    Defendant's failure to act violates the APA, 5 U.S.C. § 706(1), the INA and its implementing regulations, and agency policy. Because Defendant has failed to carry out his duties and obligations under the law and governing regulations, depriving Plaintiff of his clearly established right, Plaintiffs is entitled to a writ of mandamus and/or relief under the APA directing Defendant to adjudicate their Form I-485 applications forthwith.

## COUNT I
## Mandamus
## 28 U.S.C. § 1361

75.    All previous paragraphs are incorporated as though fully set forth herein.

76.    Defendants USCIS, Director Edlow, and Director Jackson are charged with the responsibility of administering and implementing the INA. Defendants bear sole responsibility for providing an adjudication of Plaintiff's I-485.

21

77.     Defendants' failure to discharge their statutory obligations is injuring Plaintiff by failing to interview and adjudicate Plaintiff's adjustment application. Defendants must be compelled to perform a duty owed to Plaintiff. Namely, that Defendants properly adjudicate Plaintiff's Form I-485.

78.     A Mandamus plaintiff must demonstrate that : (i) he or she has a clear right to the relief requested; (ii) the defendant has a clear duty to perform the act in question; and (iii) no other adequate remedy is available. Liberty Fund, Inc, v. Chao, 394F. Supp. 2d 105, 113 (D.D.C. 2005); see also Patel, 134 F. 3d at 933 ( duty to adjudicate and immigrant visa application).

79.     Plaintiff clearly meets all three of these criteria. *See*, e.g., *Raduga USA*, 440 F. Supp. 2d at 1146 ("Plaintiffs' claim here is clear and certain, and the consul's nondiscretionary, ministerial duty is plainly prescribed. Furthermore, Plaintiffs have no other means to compel the United States consul to make a decision.") *United States v. Kerry*, 168 F.Supp.3d 268, 291-92. (D.D.C. 2016)(holding the doctrine of consular non-reviewability did not apply where plaintiffs visa applications were not formally refused, but were held in "administrative processing"); see also *Patel v. Reno*, 134 F.3d 929, 932-33 (9th Cir. 1997)(affirming the granting of mandamus relief where plaintiff's application had only been "provisionally refused"); *Maramjaya v. U.S. Citizenship & Immigration Servs.*, 2008 WL 9398947, at 4 (D.D.C. Mar. 26, 2008)(holding that the doctrine of consular non-reviewability did not apply when the case had not procedurally progressed to the point where consular immunity would bar judicial review").

80.     Defendant has a clear non-discretionary duty to adjudicate Plaintiff's form I-485, application.

81.     Defendants owe a duty to act upon Plaintiff's Form I-485.

82.     The INA, and the regulation pursuant to it, impose on Defendant's a non-discretionary duty to timely adjudicate Plaintiff's form I-485 application and to complete any background checks, interviews, or other investigation required by USCIS in order to do so.

83.     Plaintiff asserts that Defendant's have no legal basis for failing to proceed with the application, and that he has no other adequate remedy at law for Defendant's failure to timely adjudicate his application and any background checks or investigation required.

84.     Defendants have failed to adjudicate Plaintiff's application even though it presumably, as a matter of law, has been in possession of all information needed to adjudicate Plaintiff's I-485 application since May 2023. Therefore, Defendants have refused to perform duties legally required of them under federal immigration law, and the Mandamus Act grants this court authority to compel USCIS to perform duties legally required of it under federal law. The Mandamus Act, therefore, grants this court legal authority to compel USCIS to adjudicate Plaintiff's form I-485.

85.     Defendants' failure to meet their statutory obligations is detrimental to Plaintiff.

## COUNT II
### Administrative Procedures Act
### Unreasonable Delay in Agency Action
### 5   U.S.C. §§ 701, *et seq.*

86.     All previous paragraphs are incorporated as though fully set forth herein.

87.     The purpose of the Administrative Procedures Act ("APA") is to prevent abuse of discretion by federal agencies by granting the federal judiciary authority to review the actions of such agencies.

88.     One mechanism the APA uses to prevent abuse of discretion is to place time constraints upon agencies so that agencies do not use prolonged delays for the sole purposes of

harassment and intimidation, or as a method to disguise a refusal to act. For this reason, the APA requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555 (emphasis added).

89.    The APA also empowers federal courts to review federal agencies to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (emphasis added).

90.    The court also may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (emphasis added); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551 (13) (emphasis added).

91.    By failing to adjudicate Plaintiffs form I-485 within a reasonable time, Defendants USCIS', Director Edlow, and Director Jackson's practices and procedures violate the Administrative Procedures Act and constitute agency action that is arbitrary and capricious, and not in accordance with law. 5 U.S.C. §§ 701, *et seq.*

92.    A District Court reviewing agency action may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). The Court may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. §796(2)(C); or "without observance of procedure required by law," 5 U.S.C. 706(2)(D). "Agency action" includes, in relevant part, "an

agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

93.    The failure of Defendants to adjudicate Plaintiff's form I-485 for over 973 days ( 2 years, 7 months, and 28 days) violates the APA because they have repeatedly failed to respond to Plaintiffs' requests and continue to ignore their administrative and statutory duties, 5 U.S.C. §555(b), 5 U.S.C. §§706(1), 706(2)(A), 706(2)(C), and 706(2)(D).

94.    Plaintiff is eligible for and has fulfilled all statutory requirements for form I-485 adjustment of status. He has submitted all necessary information and evidence supporting the application and paid any necessary fees.

95.    The failure of the Defendants USCIS, Director Edlow, and Director Jackson to timely adjudicate Plaintiff's Forms I-485 with the full knowledge that statutes and regulations require the adjudication of these Forms within a reasonable time violates the APA.

96.    Defendants USCIS, Director Edlow, and Director Jackson, admittedly state that the processing time for an application to register permanent residence or adjust status (Form I-485) for applicants with a grant of asylum is 20.5 months.

97.    Defendants' failure to meet their statutory obligations is detrimental to Plaintiff.

### COUNT III
### Declaratory Judgment Act- The Policy Memorandums' "Hold" is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law, 5 U.S.C. 706(2)(A).

98.    All previous paragraphs are incorporated as though fully set forth herein.

99.    Plaintiff contends that Defendants USCIS, Director Edlow, and Director Jackson's actions are unconstitutional, violate the APA, the INA, and are arbitrary and capricious and seeks a declaration to that effect. 28 U.S.C. § 2201.

100.    On the past New Years Eve, December 31, 2025, when people across the United States were making resolutions about their goals and hopes for the New Year, the Department of Homeland Security ( the department which houses USCIS) made a post on social media provider X romanticizing the administrations' vision of the U.S. free from any immigrants at all, which already has over 20 million views. Homeland Security on X: "The peace of a nation no longer besieged by the third world. https://t.co/UrPiRA7X1C" / X.

101.    As the entire U.S. foreign-born population is only 47 million people (most of them legal immigrants), when the administration talks about "100 million Deportations," that implies deporting the entire U.S. foreign-born population in the US, including Plaintiff here, as well as 53 million native-born U.S. citizens. Defendants' Policy Memorandum are an early step in satisfying DHS's resolution for 2026. If this behavior does not demonstrate impropriety, it's difficult to imagine a scenario that could.

102.    The APA provides that a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be… "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A).

103.    Agency action is valid is valid if a reasonable basis exists for [ the agency's] decision. "*Pacito v. Trump*, 768 F. Supp. 3d. 1199,1232 ( W.D. Wash. 2025) (finding that plaintiffs were likely to succeed on their claims that Executive Order 14163, *Realigning the United States Refugee Admissions Program* ("EO 14163) was arbitrary and capricious) ( currently subject to an interim stay pending the outcome of an appeal). In *Pacito*, the court found that government Defendant "did not" as is required under arbitrary and capricious review, acknowledge, let alone meaningfully consider, the reliance interest of refugees. U.S. citizens, and resettlement nonprofits

harmed by their actions." *Id*. at 1233. "Nor did they articulate any consideration of alternative options." *Id*.

104.    Similarly, here, Defendant did not acknowledge, let alone, meaning fully consider the reliance interest of form I-485 applicants harmed by their actions. Therefore, Defendant's actions and decision to withhold adjudication was arbitrary and capricious, and the Court should enjoin.

105.    As mentioned above, DHS Delegation of Authority 0150.1 from June 05, 2003, which Defendant's rely on its authority for the issued Policy Memorandum, gives USCIS the authority to investigate, interrogate, and conduct biometrics for aliens in the U.S., it however, does not extend USCIS authority to implement a *hold* on I-485 applications.

**COUNT IV: Agency Action Without Observance of Procedure Required by Law in Violation of 5 U.S.C. Section 706 (2)(D).**

106.    All previous paragraphs are incorporated as though fully set forth herein.

107.    The APA requires administrative agencies to follow notice-and comment rulemaking procedures to promulgate substantive rules. 5 U.S.C § 553.

108.    The Administrative Procedure Act defines "rule" broadly to include "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages…" 5 U.S.C. § 551(4).

109.    Defendant promulgated and relied upon the policies, procedures, and practices placing on hold all pending applications and benefits for aliens from countries listed in PP 10949,

without authority and without notice and comment rulemaking. Defendants' actions are therefore unlawful.

110.    Defendant's policies, procedures, and practices placing on hold all pending immigration benefits for nationals from 39 countries, and the Palestinian Authority, constitutes a substantive rule subject to the APA's notice-and-comment requirements.

111.    Defendant's policies, procedures, and practices suspending the adjudication of immigration benefits for citizens from 39 countries plus the Palestinian Authority constitute a substantive rule because it affirmatively circumscribes USCIS's Congressional mandate and nondiscretionary duty to adjudicate and issue decisions for properly submitted immigration applications.

112.    Defendant's policies, procedures, and practices halting the adjudication of pending immigration benefits constitute a substantive rule because it is a categorical rule which applies to almost all pending benefits, including Form I-485 applications for applicants of 39 countries, plus the Palestinian Authority.

113.    In implementing USCIS's policies, procedures, and practices halting adjudication of immigration benefits for beneficiaries from 39 countries, plus the Palestinian Authority, Defendant impermissibly announced a new rule without undertaking notice-and-comment rulemaking.

114.    Plaintiff was harmed, and continues to be harmed, by these unlawful acts.

### COUNT V: Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A)

115.    All previous paragraphs are incorporated as though fully set forth herein.

116.    Under the INA, applicants have a right to be free from discrimination based on their ethnicity and national origin. See 8 U.S.C. 1152(a)(1)(A) ("No person shall receive any preference

or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.").

117. Here, the Defendant promulgated the Policy Memorandums that withhold USCIS benefits based upon an applicant national origin in direct violation of the Nondiscrimination Clause of the INA. Thus, Defendant's Memorandums violate the INA and should be enjoined by the Court.

**COUNT VI: Equal Protection, Fifth Amendment of the U.S. Constitution**

118. All previous paragraphs are incorporated as though fully set forth herein.

119. The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall… be deprived of life, liberty, or property, without due process of law." The Clause contains an equal protection component.

120. The Policy Memorandums cause discrimination to Plaintiff, who is physically present in the United States, on the basis of national origin, a suspect classification, and is not narrowly tailored to serve a compelling government interest and thereby violates the equal protection component of the Due Process Clause.

121. Further, Defendant's lack any true rational basis for the national origin discrimination.

122. Nationality is not a permissible criterion for domestic adjudication of adjustment of status.

123. Additionally, the Policy Memorandums were substantially motivated by an intent to discriminate against citizens from travel ban countries, on whom it has a disparate effect, in further violation of the equal protection component of the Due Process Clause.

29

124.    Therefore, the Policy Memorandums hold on adjudication of Plaintiff's application should be enjoined.

## COUNT VII: *Ultra Vires*

125.    All previous paragraphs are incorporated as though fully set forth herein.

126.    The Policy Memorandums rely directly and indirectly upon authority from DHS Delegation of Authority 0150.1 from June 05, 2003, and from INA 212 (f).

127.    INA 212 (f) of the Immigration and Nationality Act grants the president of the United States the authority to "suspend the entry" of certain noncitizens into the United States under certain circumstances. Specifically, the section reads: "[Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the Interest of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate."

128.    However, the INA does not provide defendants with any authority to withhold adjudication of Plaintiff's I-485 or grant the president to do anything other than bar *entry* (Emphasis Added) of a class of aliens.

129.    The Court has inherent equitable power to enjoin actions by federal officers in excess of their lawful authority. See, e.g. *Sierra Club v. Trump*, 929 F3d 670, 694 (9th Cir 2019) (The Supreme Court has 'long held that federal courts may in some circumstances grant injunctive relief against federal officials violating federal law.") (Quoting *Armstrong v. Exceptional Child Ctr,. Inc.*, 135 S. Ct. 1378, 1384 (2015)); *E.V. v. Robinson*, 906 F3d. 1082, 1090-91 ( 9th Cir. 2018) (acknowledging freestanding cause of action for "suits

30

alleging that a federal official acted *ultra vires* of statutorily delegated authority" or "violated the Constitution"); *Trudeau v. Fed Trade Comm'n*, 456 F3d 178, 189-190 (D.C. Cir 2006) ( "Judicial review is available when an agency acts ultra vires, even if a statutory cause of action is lacking.") (quotation marks omitted).

130.    A court in the Ninth Circuit recently found that the President cannot use INA 212(f) to suspend refugees' status application, and that EO 14163 is *ultra vires*. *Pacito v. Trump*, 768 F. Supp 3d. 1199, 1221 (W.D. Wash. 2025).

131.    Similarly, here, like EO 14163, the Policy Memorandums direct the suspension of immigration benefits, such as the adjustment of status applications for Plaintiff, contrary to the statutory framework established by Congress for how such benefits may be obtained under INA 245(a) and 8 C.F.R. § 209.2. The INA confers discretion on the Secretary of Homeland Security over the grant or denial of individual applications, not the authority to impose a categorical pause/hold on the adjudication of all such petitions based on national origin. *Pacito* also held that the President cannot use his authority under INA 212(f), which governs the entry of aliens, to override such statutory schemes, like INA 245(a) and 8 C.F.R. 209.2., for immigrants inside the U.S.

132.    Finally, unlike *Pacito* plaintiff's challenge to EO 14163, here plaintiff is inside the U.S. and INA 212(f) confers no authority to the Executive Branch regarding noncitizens within the US.

133.    Thus, the Court should enjoin the Policy Memorandums as applied to Plaintiff, as it was issued without lawful authority.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court grant the following relief:

31

134.     Declare that Defendants USCIS, Director Edlow, and Director Jackson have a duty to adjudicate Plaintiff's I-485 within a reasonable time;

135.     Declare that Plaintiff has complied with all requirements for Plaintiff to become a legal permanent resident, including that Plaintiff's I-485 form be adjudicated by USCIS;

136.     Issue a Writ of Mandamus directing Defendant's to complete all the necessary steps to adjudicate Plaintiff's Form I-485, within thirty (30) days from the date of the order;

137.     Issue an order pursuant to the APA, 5 U.S.C. § 706(1) et seq., directing Defendant to take all steps necessary to adjudicate Plaintiffs' Form I-485 applications, within thirty (30) days from the date of the order;

138.     Enjoin Defendant's and those acting under them from any further withholding of, or delay in, the adjudication of Plaintiff's Form I-485 through any of the Policy Memorandums;

139.     Declare that Defendant's continued failure to adjudicate Plaintiff's form I-485 application constitutes agency action unlawfully withheld and thus, unreasonably delayed;

140.     Issue an order pursuant to 8 U.S.C. § 1152(a)(1)(A) and the Due Process Clause of the Fifth Amendment of the U.S. Constitution enjoining Defendant from discriminating against Plaintiff based upon his nationality.

141.     Enjoin Defendant's Policy Memorandum I and Policy Memorandum II, as they apply to Plaintiff, for violating the INA, the Constitution, and *Ultra Vires;*

142.     Retain jurisdiction over this action and attendant proceeding until Defendant has adjudicated Plaintiff's form I-485 application, and communicated that fact to the Court;

143.     Award Plaintiffs reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act. *See* 5 U.S.C. § 504; & 28 U.S.C. § 2412; and

144.     Award all other relief to Plaintiffs that it deems just, equitable, and proper.


DATED:       January 27, 2026                    */s/ Alejandro Macias Urias*_____

                                                 Alejandro Macias Urias
                                                 **MACIAS LAW**
                                                 PO Box 7176
                                                 Albuquerque, New Mexico 87194
                                                 Office: (505) 289-1832
                                                 am@alejandromaciaslaw.com
                                                 *Attorney for Plaintiffs*

# Exhibit A



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

**U.S. Citizenship and Immigration Services**

December 2, 2025

PM-602-0192

# Policy Memorandum

**SUBJECT:**   Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries[1]

**Purpose**

Effective immediately, this memorandum directs U.S. Citizenship and Immigration Services (USCIS) personnel to:

1. Place a hold on all Forms I-589 (Application for Asylum and for Withholding of Removal), regardless of the alien's country of nationality, pending a comprehensive review;
2. Place a hold on pending benefit requests[2] for aliens from countries listed in *Presidential Proclamation (PP) 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*,[3] pending a comprehensive review, regardless of entry date[4]; and
3. Conduct a comprehensive re-review of approved benefit requests for aliens from countries listed in PP 10949 who entered the United States on or after January 20, 2021.[5]

This memorandum mandates that all aliens meeting these criteria undergo a thorough re-review process, including a potential interview[6] and, if necessary, a re-interview, to fully assess all national security and public safety threats along with any other related grounds of inadmissibility or ineligibility.[7] An individualized, case-by-case review and assessment will be done of all relevant information and facts. USCIS will also conduct a comprehensive review of all relevant policies,

---

[1] On June 4, 2025, the President issued Presidential Proclamation 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats.* Exercising authority under section 212(f) of the Immigration and Nationality Act (INA), the proclamation imposes restrictions, limitations, and exceptions on the entry of aliens from 19 high-risk countries. Under INA 212(f), the President may suspend or restrict the entry of any aliens deemed detrimental to U.S. interests. See 90 FR 24497 (PDF) (June 4, 2025).

[2] The term "benefit request" in this memorandum does not include USCIS screening activities, including credible fear, reasonable fear, safe third country, third country removal, and threshold screenings under the Asylum Cooperative Agreements.

[3] This applies to aliens who list one of the 19 high-risk countries as their Country of Birth or Country of Citizenship.

[4] Including Form I-485 (Application to Register Permanent Residence or Adjust Status), Form I-90 (Application to Replace Permanent Resident Card (Green Card)), Form N-470 (Application to Preserve Residence for Naturalization Purposes), Form I-751, (Petition to Remove Conditions on Residence), and Form I-131 (Application for Travel Documents, Parole Documents, and Arrival/Departure Records).

[5] Entered may include admitted, inspected, paroled, or entered without inspection.

[6] Interviews for this population shall not be waived under any circumstance. For benefit requests where an interview is not required, the case review and evaluation will determine if the alien needs to appear at a USCIS office.

[7] See INA 212(a)(3)(A), (B), and (F) and 237(a)(4)(A) and (B).

PM-602-0192: Hold and Review of all Pending Asylum Applications and all USCIS Benefit
Applications Filed by Aliens from High-Risk Countries
Page: 2

procedures, and operational guidance for compliance, accuracy, and needed improvements during
this time.

This guidance outlines the adjudicative hold, procedural requirements, and processes for the re-
review, interview, or re-interview of affected aliens. USCIS personnel are instructed to prioritize
national security and public safety concerns and ensure compliance with all applicable laws and
regulations during the adjudication process. All findings must be documented in accordance with
established protocols to support any subsequent determinations or actions.

**Background**

On January 20, 2025, the President issued Executive Order (EO) 14161, titled *Protecting the United
States from Foreign Terrorist and Other National Security and Public Safety Threats*. This order
aims to safeguard U.S. citizens from aliens who may seek to commit terrorist acts, pose threats to
national security, promote hateful ideologies, or exploit immigration laws for malicious purposes.
EO 14161 underscores the importance of vigilance during the visa issuance process to ensure that
individuals approved for admission into the United States do not intend to harm Americans or
compromise U.S. national interests.

Recently, the United States has seen what a lack of screening, vetting, and prioritizing expedient
adjudications can do to the American people. An Afghan national, Nasir Ahmad Tawhedi, planned
a terrorist attack in the United States on Election Day 2024. Tawhedi pled guilty in federal court to
conspiring and attempting to provide material support and resources to the Islamic State of Iraq and
al-Sham (ISIS).[8] In another instance, an Afghan national, Rahmanullah Lakanwal, is suspected of
planning and executing a terrorist attack in Washington, DC against two National Guard members,[9]
one who was killed and another who remains critically injured. USCIS plays an instrumental role in
preventing terrorists from seeking safe haven in the United States and ensuring that USCIS'
screening and vetting and adjudications prioritize the safety of the American people and uphold all
U.S. laws.

In light of identified concerns and the threat to the American people, USCIS has determined that a
comprehensive re-review, potential interview, and re-interview of all aliens from high-risk countries
of concern who entered the United States on or after January 20, 2021 is necessary. Lastly, USCIS
may, when appropriate, extend this review and re-interview process to aliens who entered the
United States outside of this timeframe.

USCIS remains committed to ensuring that all aliens from high-risk countries of concern that
entered the United States do not present threats to national security or public safety. To address
vulnerabilities during this process, and in order to conduct a comprehensive review of all policies,
procedures, and guidance, USCIS has determined that it must implement an adjudicative hold on all
pending asylum applications, regardless of the alien's country of nationality, as well as pending
benefit requests filed by aliens from high-risk countries outlined in PP 10949. This hold will remain

---

[8] See *Afghan National Pleads Guilty to Plotting Election Day Terror Attack in the United States,* U.S. Department of
Justice, June 13, 2025.
[9] See *Terrorist Who Shot Two National Guard Members in D.C. Was Let into the Country by the Biden
Administration's Operation Allies Welcome Program*, U.S. Department of Homeland Security Press Release,
November 26, 2025.

PM-602-0192: Hold and Review of all Pending Asylum Applications and all USCIS Benefit
Applications Filed by Aliens from High-Risk Countries
Page: 3

in effect until lifted by the USCIS Director through a subsequent memorandum. Any requests to lift
the hold due to litigation or other extraordinary circumstances must receive approval from the
USCIS Director or Deputy Director.[10]

**Guidance**

USCIS has determined the operational necessity to ensure that all asylum applicants and aliens from
high-risk countries of concern who entered the United States do not pose a threat to national
security or public safety. This effort ensures that USCIS exercises its full authority to investigate
immigration benefit requests filed by aliens who may pose risks to the national security and public
safety of the United States, as outlined in DHS Delegation of Authority 0150.1, issued June 5,
2003.

USCIS will conduct a thorough review on a case-by-case basis to assess benefit eligibility including
whether:

1. The alien is listed in the Terrorist Screening Dataset (TSDS) as a Known or Suspected
   Terrorist (KST) under Tier 1 or Tier 2 classifications or is included in Tier 3 or Tier 4 of the
   TSDS with significant derogatory information related to the alien.
2. The alien is connected to prior, current, or planned involvement in, or association with, an
   activity, individual, or organization described in sections 212(a)(3)(A), (B), or (F), or
   237(a)(4)(A) or (B) of the Immigration and Nationality Act (INA).
3. The alien is linked to prior, current, or planned involvement in, or association with, an
   activity, individual, or organization that may pose a risk of serious harm or danger to the
   community, including criminal conduct described in INA 101(a)(43), 212(a)(1)(A)(iii),
   212(a)(2), 237(a)(2), or 237(a)(4)(A)(ii).
4. The alien is unable to establish their identity as outlined in PP 10949.[11]

This process ensures that USCIS exercises its full authority to protect national security and public
safety while adhering to the provisions of the INA and applicable laws. USCIS has considered that
this direction may result in delay to the adjudication of some pending applications and has weighed
that consequence against the urgent need for the agency to ensure that applicants are vetted and
screened to the maximum degree possible. Ultimately, USCIS has determined that the burden of
processing delays that will fall on some applicants is necessary and appropriate in this instance,
when weighed against the agency's obligation to protect and preserve national security.

Within 90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview,
re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in
consultation with the Office of Policy and Strategy and the Fraud Detection and National Security
Directorate, issue operational guidance.

**Use**

---

[10] Any request for an exemption to the adjudicative hold must be coordinated with the Office of Policy and Strategy.
[11] See USCIS Policy Manual, Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8,
Discretionary Analysis [1 USCIS-PM E.8].

PM-602-0192: Hold and Review of all Pending Asylum Applications and all USCIS Benefit
Applications Filed by Aliens from High-Risk Countries
Page: 4

This policy memorandum is intended solely for the guidance of USCIS personnel in the performance of their official duties, but it does not remove their discretion in making adjudicatory decisions. It may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

# Exhibit B



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

January 1, 2026                                          PM-602-0194

# Policy Memorandum

**SUBJECT:**    Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries[1]

**Purpose**

Effective immediately, this memorandum directs U.S. Citizenship and Immigration Services (USCIS) personnel to:

1. Place a hold[2] on all pending benefit applications, for aliens[3] listed[4] in Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*,[5] pending a comprehensive review, regardless of entry date;[6]
2. Conduct a comprehensive review of all policies, procedures, and screening and vetting processes for benefit requests for aliens from countries listed in PP 10998; and
3. Conduct a comprehensive re-review of approved benefit requests implicated in PP 10998 that were approved on or after January 20, 2021.

---

[1] On December 16, 2025, the President issued Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*. Exercising authority under INA 212(f), the proclamation continues the full restrictions and entry limitations of nationals from the original high-risk countries established under PP 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats* (June 4, 2025), and imposes restrictions, limitations, and exceptions on additional high-risk countries. Under INA 212(f), the President may suspend or restrict the entry of any aliens deemed detrimental to U.S. interests.

[2] A "hold" allows a case to proceed through processing, up to final adjudication. A "final adjudication" refers to the issuance of a final decision on a case, such as an approval, denial, or dismissal.

[3] The term "alien" means any person not a citizen or national of the United States. See INA 101(a)(3) and 8 U.S.C. 1101(a)(3).

[4] This refers to aliens with a nationality, country of birth, or aliens who have acquired Citizenship by Investment (CBI) listed in PP 10998. "As an example, a foreign national from a country that is subject to travel restrictions could purchase CBI from a second country that is not subject to travel restrictions, obtain a passport in the citizenship of that second country, and subsequently apply for a United States visa for travel to the United States, thus evading the travel restrictions on his or her first country." Further, this includes aliens with varying nationalities but are traveling on a Palestinian-Authority-issued document.

[5] This applies to aliens who list one of the high-risk countries as their Country of Birth or Country of Citizenship.

[6] Immigrant visas for family members of individuals in the United States will no longer be automatically or broadly exempt from PP 10949 and PP 10998 restrictions or requirements. Family-based immigrant visa applications are now subject to the same review, restrictions, or additional scrutiny as other benefit requests.

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional
High-Risk Countries
Page: 2

This memorandum specifies which cases are subject to the adjudicative hold, identifies exemptions, and outlines the factors to consider when assessing benefit eligibility during the re-review, interview, or re-interview of affected aliens. USCIS personnel are instructed to prioritize national security and public safety concerns and ensure compliance with applicable laws and regulations during the adjudication process. All findings must be documented in accordance with established protocols to support any subsequent determinations or actions.

This memorandum does not supersede the guidance in Policy Memorandum, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries* on December 1, 2025[7] except as specified under the "Exceptions to the Adjudication Hold" outlined in this memorandum.

**Background**

On January 20, 2025, the President issued Executive Order (EO) 14161, titled *Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats*. This order aimed to safeguard U.S. citizens from aliens who may seek to commit terrorist acts, pose threats to national security, promote hateful ideologies, or exploit immigration laws for malicious purposes. EO 14161 underscores the importance of vigilance during the visa issuance process to ensure that individuals approved for admission into the United States do not intend to harm Americans or compromise U.S. national interests.

Accordingly, through PP 10949 and PP 10998, the President restricted the entry of foreign nationals from countries lacking adequate screening and vetting information to safeguard the national security and public safety of the United States and its citizens. The proclamations also instructed the United States Government to promptly engage with the countries identified, outlining the necessary steps to meet U.S. screening, vetting, immigration, and security standards. However, despite those efforts, most of the countries named in PP 10949 and PP 10998 – and others – continue to demonstrate significant deficiencies in screening, vetting, and information sharing. In addition to PP 10949, PP 10998 emphasizes that "it is the policy of the United States to protect its citizens from foreign nationals who intend to commit terrorist attacks, threaten our national security and public safety, incite hate crimes, or otherwise exploit the immigration laws for malevolent purposes."

Following the continued review since the issuance of PP 10949, as well as the responses of foreign countries to that proclamation, the United States Government has identified additional countries that are unable to meet basic criteria for identifying their nationals and residents who may pose national security and public safety risks, or for sharing necessary information with the United States. It is paramount that the United States Government ensure aliens in the United States do not intend to threaten its citizens or undermine or destabilize its culture, government, institutions, or

---

[7] USCIS issued a public-facing version on December 2, 2025. See Policy Memorandum, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries,* December 2, 2025 (PM-602-0192).

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 3

founding principles. Entry will not be granted to aliens who advocate for, aid, or support designated foreign terrorists or other threats to our national security or public safety.

As a result of these reviews and considerations, the President has determined to maintain and adjust the restrictions outlined in sections 2 and 3 of PP 10949 regarding the entry of certain classes of foreign nationals into the United States. Additionally, further limitations have been imposed on the entry of aliens from additional high-risk countries in PP 10998.

Considering identified concerns and the threat to the American people, USCIS has determined a comprehensive re-review, potential interview, and re-interview of all aliens from high-risk countries of concern who entered the United States on or after January 20, 2021, is necessary.[8]

USCIS remains dedicated to ensuring aliens from high-risk countries of concern who have entered the United States do not pose risks to national security or public safety. To faithfully uphold United States immigration law, the flow of aliens from countries with high overstay rates, significant fraud, or both must stop. To address potential vulnerabilities, USCIS will place an adjudicative hold on all pending benefit requests submitted by or for aliens from the high-risk countries identified in PP 10998, allowing for a thorough case-by-case review. This hold will remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum or memorandum attachment. Any requests to lift the hold due to litigation or other extraordinary circumstances must receive approval from the USCIS Director or Deputy Director.

**Guidance**

USCIS has determined the operational necessity to ensure all aliens from high-risk countries of concern who entered the United States do not pose a threat to national security or public safety. This effort ensures USCIS exercises its full authority to investigate immigration benefit requests filed by or for aliens who may pose risks to the national security and public safety of the United States, as outlined in DHS Delegation of Authority 0150.1, issued June 5, 2003.

USCIS will conduct a thorough review on a case-by-case basis to assess benefit eligibility including whether:

1. The alien is listed in the Terrorist Screening Dataset (TSDS) as a Known or Suspected Terrorist under Tier 1 or Tier 2 classifications or is included in Tier 3 of the TSDS with significant derogatory information related to the alien.
2. The alien is connected to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in sections 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B) of the Immigration and Nationality Act (INA).
3. The alien is linked to prior, current, or planned involvement in, or association with, an activity, individual, or organization that may pose a risk of serious harm or danger to the community, including criminal conduct described in INA 101(a)(43), 212(a)(1)(A)(iii), 212(a)(2), 237(a)(2), or 237(a)(4)(A)(ii).

---

[8] Additionally, USCIS may, when appropriate, extend this review and re-interview process to aliens who entered the United States outside of this timeframe.

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 4

4. The alien is unable to establish their identity as outlined in PP 10949 and PP 10998.[9]

Many of these restricted high-risk countries experience widespread corruption, unreliable or fraudulent civil documents and criminal records, and lack effective birth registration systems, which systematically hinder accurate vetting and identity verification. Officers must consider these country-specific factors when conducting security and background checks, and when reviewing civil documents such as passports, marriage and divorce certificates, and birth certificates, as well as criminal history information. Officers must follow established policies to ensure proper screening and vetting procedures are conducted, and that any derogatory information is thoroughly evaluated and appropriately resolved.

This process ensures that USCIS exercises its full authority to protect national security and public safety while adhering to the provisions of the INA and applicable laws. USCIS has considered that this direction may result in delay to the adjudication of some pending applications and has weighed that consequence against the urgent need for the agency to ensure that aliens are vetted and screened to the maximum degree possible. Ultimately, USCIS has determined the burden of processing delays which will fall on some aliens is necessary and appropriate, when weighed against the agency's obligation to protect and preserve our national security.

*Exceptions to the Adjudication Hold*[10]

Exceptions to the adjudication hold for cases with identified national security, public safety, or fraud-related derogatory information still require the adjudicative directorate or program office to coordinate with U.S. Immigration and Customs Enforcement (ICE) in accordance with current policies and procedures before final adjudication. The following are exceptions to the adjudication hold:

1. Form I-90, Application to Replace Permanent Resident Card (Green Card);[11]
2. Form N-565, Application for Replacement Naturalization/Citizenship Document;
3. Form N-600, Application for Certificate of Citizenship;[12]

---

[9] See USCIS Policy Manual, Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[10] Any request for an exemption to the adjudicative hold must be coordinated with the USCIS Office of Policy and Strategy (OP&S). OP&S will track and record all the hold lifts. OP&S will issue additional guidance within 7 days of issuing this memorandum.

[11] Lawful permanent residents are entitled to evidence of status in the United States. Lawful permanent residents are eligible for replacement of their Permanent Resident Card if they meet certain requirements. See USCIS Policy Manual, Volume 11, Travel and Identity Documents, Part B, Permanent Resident Cards, Chapter 2, Replacement of Permanent Resident Card [11 USCIS-PM B.2].

[12] Except Yemen and Somalia. Yemen and Somalia are not included in this particular exception due to security and documentary concerns specific to those countries as documented on the Department of State Visa Reciprocity Schedules for these countries.

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 5

4. Form I-765, Application for Employment Authorization filed under the (c)(8),[13] limited (c)(11),[14] and limited (c)(14)[15] categories;

5. Form I-910, Application for Civil Surgeon Designation (only for physicians that are citizens or nationals of the United States);

6. Benefit requests filed by any alien who is an athlete or member of an athletic team, including the coaches, persons performing a necessary support role, and immediate relatives for the purpose of participating in the World Cup, Olympics, or other major sporting event as determined by the Secretary of State;

7. Benefit requests that are a priority for law enforcement and where ICE has requested USCIS take adjudicative action to uphold public safety or national security;

8. Benefit requests filed by aliens whose entry would serve a United States national interest;[16]

9. Benefit requests, as well as the associated underlying benefits, for any programs that are terminated or discontinued as a result of an Executive Order, Proclamation, Federal Register Notice, or Directive issued by the President, the Secretary of Homeland Security, or the USCIS Director; and

10. Automatic termination decisions for ancillary or related benefit requests when an alien is granted Legal Permanent Resident status or becomes a naturalized citizen.[17]

Within 90 days of this memorandum issuance, and in consultation with OP&S and the Fraud Detection and National Security Directorate, USCIS will prioritize a list for review, interview, and re-interview, and issue operational guidance.

**Use**

This policy memorandum is intended solely for the guidance of USCIS personnel in the performance of their official duties, but it does not remove their discretion in making adjudicatory decisions. It may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

---

[13] See 8 CFR 274a.12(c)(8). Only applies to *initial* (c)(8) filings. *Asylumworks v. Mayorkas* requires USCIS to process all initial Form I-765 filed under the (c)(8) category within 30 days.

[14] See 8 CFR 274a.12(c)(11). Form I-765 filed under the (c)(11) category exceptions only apply when the request comes from law enforcement because the alien is assisting law enforcement.

[15] See 8 CFR 274a.12(c)(14). Form I-765 filed under the (c)(14) category exceptions only apply when the request comes from law enforcement because the alien is assisting law enforcement.

[16] For example, a benefit request filed by an alien whose entry into the United States would provide significant benefit to the United States may include, but is not limited to, a scientist or medical researcher working on a critical public health project, an engineer with specialized skills needed for a key infrastructure initiative, or someone with unique expertise supporting U.S. national security or economic interests. This is a case-by-case determination and requires approval from the headquarters of the adjudicative directorate or program office.

[17] For example, when USCIS approves an individual's Form I-485, any associated or underlying applications, such as Form I-765, will be automatically terminated, as the benefit provided by the ancillary form is no longer necessary.

# Exhibit C

**Department of Homeland Security**
**Delegation Number: 0150.1**
**Issue Date: 06/05/2003**

# DELEGATION TO THE BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES

## I.    Purpose

This delegation vests in the Bureau of Citizenship and Immigration Services (BCIS) and through its highest ranking official to regional directors, asylum directors, district directors, service center directors, adjudication officers, asylum officers, immigration information officers, and other officers or employees of the BCIS the authorities described herein in order to accomplish the mission of the BCIS.  This delegation is made through, and the exercise of any authorities therein is subject to the authority, direction, and control of, the Deputy Secretary of the Department of Homeland Security.

## II.    Delegations

Pursuant to the authority vested in the Secretary of Homeland Security by law, including the Homeland Security Act of 2002, I hereby delegate to the Bureau of Citizenship and Immigration Services:

A.    Authority to establish policies for performing such functions as are transferred to the Director by section 451 of the Homeland Security Act of 2002 (Act) or otherwise vested in the Bureau by law.

B.    Authority to oversee the administration of such policies.

C.    Responsibility for advising the Deputy Secretary with respect to any policy or operation of the BCIS that may affect the Bureau of Customs and Border Protection (BCBP) or the Bureau of Immigration and Customs Enforcement (BICE) of the Department, including potentially conflicting policies or operations.

D.    Authority to establish national immigration services policies and priorities.

E.    Authority to meet regularly with the Citizenship and Immigration Services Ombudsman ("the Ombudsman") described in section 452 of Act and to establish procedures requiring a formal response to any recommendations submitted in the Ombudsman's annual report to Congress pursuant to section 451(a)(3)(F) of the Act.

1

Delegation # 0150.1

F.      Authority to design and implement in consultation with the Chief Human Capital Officer the managerial rotation program described in section 451(a)(4) of the Homeland Security Act of 2002.

G.      Authority to implement pilot initiatives for backlog elimination as described in section 451(a)(5) of the Homeland Security Act of 2002, including the authority to increase personnel, transfer personnel to focus on areas with the largest potential for backlog, and streamline paperwork.

H.      Authority under section 103(a)(1) of the Immigration and Nationality Act of 1952, as amended (INA), 8 U.S.C. §1103(a)(1), to administer the immigration laws (as defined in section 101(a)(17) of the INA).

I.      Authority to investigate alleged civil and criminal violations of the immigration laws, including but not limited to alleged fraud with respect to applications or determinations within the BCIS and make recommendations for prosecutions, or other appropriate action when deemed advisable.

J.      Authority to register and fingerprint aliens in the United States, and exercise other functions relating to registration and change of address, as provided by sections 262-266 of the INA, 8 U.S.C. §§1302-06.

K.      Authority, in consultation with the legislative affairs function of the Department of Homeland Security, to prepare reports on private bills pertaining to immigration matters under 28 C.F.R. §0.105(h).

L.      Authority to certify official Department of Homeland Security records relating to immigration matters.

M.      Authority to maintain such files and records systems as are necessary to carry out the functions of the BCIS.

N.      Authority to place aliens in removal proceeding by issuance of a Notice to Appear, and to cancel such Notice before jurisdiction vests with the Executive Office for Immigration Review of the Department of Justice (EOIR).

O.      Authority to parole an applicant for admission into the United States under section 212(d)(5) of the INA, 8 U.S.C. §1182(d)(5), and to issue advance parole documentation.

P.      Authority to grant voluntary departure under section 240B of the INA, 8 U.S.C. §1229c, and deferred action.

Q.      Authority to approve bonds issued pursuant to the immigration laws, to determine whether such bonds have been breached, and take appropriate action to protect the interests of the United States with respect to such bonds.

Delegation # 0150.1

R.    Authority to grant employment authorization under sections 214(a) or 274A(h)(3) of the INA (8 U.S.C. §§1184(a) and 1324A(h)(3)), 8 C.F.R. §274a.13, or other applicable law.

S.    Authority to interrogate aliens and issue subpoenas, administer oaths, take and consider evidence, and fingerprint and photograph aliens under sections 287(a), (b), and (f) of the INA, 8 U.S.C. §1357 and under section 235(d) of the INA, 8 U.S.C. §1225(d).

T.    Authority under the immigration laws, including but not limited to sections 207 and 208 of the INA (8 U.S.C. §1157 and §1158), to grant asylum and refugee status (and terminate such status), adjust status of refugees and asylees, make credible fear determinations, and approve withholding of removal under the Convention Against Torture.

U.    Authority to exercise appellate jurisdiction over the matters described in 8 C.F.R. §103.1(f)(3)(E)(iii) (as in effect on February 28, 2003).

V.    Authority under the immigration laws, including but not limited to sections 310 and 341 of the INA (8 U.S.C. §1421 and §1452), to grant applications for naturalization and certificates of citizenship (and revoke such naturalization), including administration of oaths, issuance of certificates, provision of citizenship materials and services to public schools to prepare naturalization candidates, supervision of courts designated under section 310 of the INA to administer oaths, and any other rights and responsibilities relating to the naturalization or citizenship of aliens.

W.    Authority under the immigration laws, including but not limited to sections 204 and 214 of the INA (8 U.S.C. §1154 and §1184), to accept and adjudicate nonimmigrant and immigrant visa petitions (whether family based, employment based, or other), including collection of appropriate fees, conduct of interviews, and appellate review of the BCIS decisions that do not fall within the jurisdiction of the EOIR.

X.    Authority to invalidate labor certifications under 8 C.F.R §214.2, 20 C.F.R. §655.209 and §656.30.

Y.    Authority to approve participation as a Regional Center and to terminate such participation under 8 C.F.R.§204.6(m) and to take other actions to administer the Immigrant Investor (EB-5) Program.

3

Delegation # 0150.1

Z.      Authority under the immigration laws to extend and change nonimmigrant status and to adjust the status of aliens to lawful residents (on a temporary or permanent basis) and to revoke such status, including determination of admissibility of aliens, authority to grant waivers of inadmissibility and permission to reapply for entry, and authority to conduct interviews (or waive interviews) regarding an alien's eligibility for an immigration benefit.

AA.     Authority to approve or deny, or withdraw approval of petitions for schools seeking approval for attendance by nonimmigrant students under 8 C.F.R. §214.3.

BB.     Authority under the immigration laws to accept, process and adjudicate any application for any immigration benefit or service not exclusively under the jurisdiction of the EOIR, ICE or CBP, including but not limited to the authority to approve, deny, transfer, revoke, rescind, or certify all existing and future immigration, naturalization and citizenship benefits.

CC.     Authority to station officers and employees of the BCIS in foreign countries as provided by section 103(a)(7) of the INA, 8 U.S.C. §1103(a)(7), and other applicable law, and to perform such other activities with respect to the international operations of the Department of Homeland Security as I may direct.

DD.     Authority to perform other functions or duties as I may direct.

The authority delegated herein may be exercised by the director, his deputy, or the highest ranking official in the Bureau.  In exercising the authority delegated herein, the BCIS shall be governed by the Homeland Security Act of 2002; all applicable federal laws, rules and regulations; and the policies, procedures, direction, authority and control of the Secretary, the Deputy Secretary, the Under Secretary for Management, or other officer authorized by the Secretary to prescribe such policies and procedures or exercise such authority, direction and control.  Nothing herein shall be construed to limit or detract from the authority of the Secretary under section 102(a)(2) and (3) of the Homeland Security Act and other applicable law.

# III.   Reservations

The above delegations of authority to the BCIS in no way limit the functions, rights, privileges, powers, and duties vested in the Commissioner of CBP or in the Assistant Secretary for ICE by law, including authority provided by the above listed statutes or any delegation from the Secretary of Homeland Security.

4

Delegation # 0150.1

The BCIS is directed to coordinate, to the extent necessary and appropriate, his exercise of the authorities under this delegation with other officials to whom I have delegated authorities that complement, relate to, involve, or are concurrent with the authorities in this delegation. Specific reference in this delegation to coordination or consultation with other officials as to certain matters is not meant to limit the responsibility of the BCIS to coordinate or consult in other matters when appropriate. Delegation of an authority to the BCIS shall not be construed to mean that the authority may be exclusively exercised by the Director; in particular, reference is made to delegations of authority to the Commissioner of CBP and to the Assistant Secretary for ICE that are with respect to many authorities parallel to, concurrent with, or overlapping with this delegation.

Unless specifically provided therein, nothing in this delegation authorizes the BCIS to enforce immigration laws by inspection of aliens or vehicles, issuance or execution of warrants, detention or release of aliens on bond, removal of aliens from the United States, issuance of stays of removal, reinstatement of removal orders, or any other enforcement authority exclusively delegated to the Commissioner of CBP or the Assistant Secretary for ICE.

Nothing is this delegation is intended to grant or provide authority or jurisdiction over any determination or matter within the sole authority of the Executive Office for Immigration Review of the Department of Justice.

# IV.  Re-delegations

Unless otherwise proscribed by statute, Executive Order, or the terms of this delegation, the powers, authorities, responsibilities, and functions of the BCIS may be re-delegated in writing by the Director or the highest ranking official to appropriate subordinate officials of the BCIS, and may be successively re-delegated to other officers or employees of the BCIS qualified to exercise the authority. The Director or the highest ranking official also may re-delegate the authority contained in this delegation to the Commissioner of CBP or to Assistant Secretary for ICE, with their consent.

Officers and employees of the former Immigration and Naturalization Service (INS), including but not limited to the Examinations (Adjudications), Citizenship and International Affairs (including asylum and refugee) Programs of the former INS will, following their transfer to the BCIS, continue to exercise their authorities and responsibilities as they existed on February 28, 2003, unless modified or revoked by the BCIS or other authorized official. Asylum officers continue to be delegated responsibilities as described in 8 C.F.R. §103.1(g)(3)(ii) (as in effect on February 28, 2003) unless modified or revoked by the BCIS or other authorized official.

Delegation # 0150.1

## V.  Authorities

Homeland Security Act, 116 Stat. 2135, Pub. L. 107-296 §§ 101, 102, 403, 441, 1502, 1706 (2002); 5 U.S.C. § 301; Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1101 et seq.; the "immigration laws," as defined by section 101(a)(17) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. 1101(a)(17).

## VI.  Credentials

Any badge, credential, seal, stamp or other such item or document that is valid at 11:59 p.m. on February 28, 2003, and that identifies an officer or employee of the INS, who is transferred to the BCIS, shall continue in effect as a badge, credential or other documentation identifying an officer or employee of the BCIS until its expiration, revocation, withdrawal, or replacement, whichever comes first.  The BCIS may authorize replacement, renewal, or new issuance of badges, credentials, seals, stamps or other such items or documents to BCIS officers or employees using Immigration and Naturalization Service identity and forms until BCIS forms are available.

## VII.  Office of Primary Interest

The Bureau of Citizenship and Immigration Services is the office with primary interest in this delegation.

## VIII. Cancellation

Delegation Number 0150 is rescinded.

## IX.  Effective Date and Time

This delegation of authority shall take effect at 12:00 midnight, March 1, 2003.

*Tom Ridge*

Secretary of Homeland Security

6

Delegation # 0150.1